# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JEAN ANGLIN,

      Plaintiff,

GENE ANGLIN,

      Intervenor Plaintiff,

      v.

BI LO, LLC d/b/a Winn Dixie
Store Number 19; ASSA ABLOY
ENTRANCE SYSTEMS US INC.; and
STANLEY ACCESS TECHNOLOGIES,
LLC,

      Defendants.

_____

BI LO, LLC,

      Cross Claimant,

      v.

ASSA ABLOY ENTRANCE SYSTEMS US
INC.; and STANLEY ACCESS
TECHNOLOGIES, LLC,

      Cross Defendants.

No. 2:21-CV-14

## ORDER

    Before the Court are motions for summary judgment filed by

Defendants BI LO, LLC, Assa Abloy Entrance Systems U.S. Inc., and

Stanley Access Technologies, LLC.  Dkt. Nos. 60, 62, 65.  After

reviewing the briefs and holding a hearing, the Court **GRANTS** the motions.

BACKGROUND

This case arises out of personal injuries Plaintiff Jean Anglin ("Plaintiff")[1] sustained in a fall after automatic sliding doors (the "Doors") at her local Winn-Dixie store on St. Simons Island, Georgia (the "Store"), closed on her.  Dkt. No. 25 ¶¶ 8-13; Dkt. No. 62-2 ¶¶ 1, 4; Dkt. No. 65-1 ¶ 13.  On June 24, 2020, Plaintiff went to the Store to purchase merchandise.  Dkt. No. 25 ¶ 7; Dkt. No. 62-2 ¶ 4; Dkt. No. 65-1 ¶ 4.  After making her purchases, Plaintiff left the store with her groceries in her shopping cart and unloaded the groceries into her car.  Dkt. No. 62-3 at 13:17-14:7.  After doing so, Plaintiff re-entered the Store and returned her shopping cart to a Store employee.  Id. at 14:2-20.  As Plaintiff exited the Store, the Doors began to close and struck her on her right hip and lower back, knocking her to the ground.  Dkt. No. 75 at 1.[2]  As a result of her fall, Plaintiff contends she suffered injuries to her left ankle, left leg, back

---

[1] Because the majority of the claims brought in this case arise out of Plaintiff Jean Anglin's fall, we refer to her throughout this order as "Plaintiff."  Plaintiff's husband, Intervenor Plaintiff Gene Anglin, asserts an independent claim for loss of consortium stemming from Plaintiff's injuries.

[2] Defendant BI-LO provided the Court a video recording from an in-store surveillance camera which shows Plaintiff's fall, as well as the events before and after the same.

and hips.  Dkt. No. 25 ¶ 9; Dkt. No. 62-2 ¶ 4; Dkt. No. 65-1 ¶ 13; Dkt. No. 60-3 at 19:36:9-22; Dkt No. 62-3 at 22:18-23, 31:8-23.

On February 9, 2021, Plaintiff filed this action against Defendants BI-LO, LLC ("Defendant BI-LO"), Assa Abloy Entrance Systems US Inc. ("Defendant Assa Abloy"), and Stanley Access Technologies LLC ("Defendant Stanley"), asserting various claims against each Defendant.  Dkt. Nos. 1, 25.  Each Defendant has a different relationship with the Store and the Doors.  The only connection Defendant Stanley has with the Store and the Doors is that it serviced the Doors twice, with its last service about five months before Plaintiff's accident.  Dkt. No. 60 at 3; Dkt. No 60-2 ¶¶ 19, 20, 29.  The only connection Defendant Assa Abloy has with the Store and the Doors is that it manufactured, but did not install, the Doors and provided service, maintenance, and repairs to the Doors pursuant to a series of service agreements.  Dkt. No. 62 at 2; Dkt. No. 62-2 ¶¶ 6, 7, 8; Dkt. No. 74-1 ¶¶ 6, 7, 8 (all stating only that the interrogatories are "unverified" or that the evidence is insufficient support for the fact that this was the "only" work performed by Defendant Assa Abloy at the Store). Defendant Assa Abloy's last recorded date of service on the Doors was May 30, 2018.  Id.  Defendant BI-LO allegedly shares a parent corporation, and a claims management service with Winn-Dixie Stores, Inc., the entity Defendant BI-LO claims operates the Store.

Dkt. No. 65-2 at 11-12; Dkt. No 65-1 ¶¶ 1, 2; Dkt. No. 73-1 ¶¶ 1, 2, 3.

Plaintiff's various claims sound in premises liability, products liability, and negligence. Each Defendant has moved for summary judgment in opposition to all claims asserted against them. Dkt. Nos. 60, 62, 65. The Court will address each motion, in turn.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. The text of Rule 56 precisely

4

outlines how a party can support factual positions. Fed. R. Civ.
P. 56(c). Specifically, Rule 56(c)(1)(A) states that a party can
assert that a fact is or is not genuinely disputed by "citing to
particular parts of materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, stipulations (including those made for
purposes of the motion only), admissions, interrogatory answers,
or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). And
these supporting documents may be challenged if a party "object[s]
that the material cited to support or dispute a fact cannot be
presented in a form that would be admissible in evidence." Fed.
R. Civ. P. 56(c)(2). "Nevertheless, evidence that can be reduced
to an admissible form at trial should be considered at summary
judgment." Carrizosa v. Chiquita Brands Int'l, Inc., No. 19-
13926, 2022 WL 4075342, at *9 (11th Cir. Sept. 6, 2022) (citing
Smith v. Marcus & Millichap, Inc., 991 F.3d 1145, 1156 n.2 (11th
Cir. 2021) ("[E]vidence does not have to be authenticated or
otherwise presented in an admissible form to be considered at the
summary judgment stage, as long as the evidence could ultimately
be presented in an admissible form." (quotation marks omitted))).

If the moving party discharges this burden, the burden shifts
to the nonmovant to go beyond the pleadings and present affirmative
evidence to show that a genuine issue of fact does exist. See
Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden

5

in one of two ways.  First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required."  Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I.  Defendant BI-LO's Motion for Summary Judgment

Plaintiff alleges that Defendant BI-LO breached its duty "to exercise reasonable care to keep its premises safe," and "fail[ed] to adequately warn that the door could close while a person was in the doorway."  Dkt. No. 25 ¶ 15.  For the reasons below, however, Defendant BI-LO is entitled to summary judgment on Plaintiff's claims.

Under Georgia law, an owner or occupier of land "owes its invitees a duty to exercise ordinary care in keeping the premises

and approaches safe.  A proprietor is not the insurer of the safety of its invitees, but it is bound to exercise ordinary care to protect its invitees from unreasonable risks of which it has superior knowledge." Fair v. CV Underground, LLC, 798 S.E.2d 358, 792 (Ga. Ct. App. 2017).  This duty "includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge[] and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." Robinson v. Kroger Co., 493 S.E.2d 403, 408-09 (Ga. 1997).

The ultimate basis for liability to an invitee "is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." Kmart Corp. v. Morris, 555 S.E.2d 106, 109 (Ga. Ct. App. 2001) (citing Zellers v. Theater of the Stars, 319 S.E.2d 553, 555 (Ga. Ct. App. 1984)).  "The mere fact that [Plaintiff] was injured, without more, 'does not give rise to liability.'" River Place at Port Royal Condo. Ass'n, Inc., v. Sapp, 856 S.E.2d 28, 32 (Ga. Ct. App. 2021) (quoting Williams v. Johnson, 809 S.E.2d 839, 841-42 (Ga. Ct. App. 2018)).

In its motion for summary judgment, Defendant BI-LO contends, first, that it is not the correct defendant-entity because it does not operate the Store.  Dkt. No. 65-2 at 11-14.  Defendant BI-LO explains that Winn-Dixie Stores, Inc. operates the Store, and that

7

the two companies "are related, but separate corporations under parent company Southeastern Grocers, Inc." Dkt. No. 65-2 at 2 n.2, 11. In the alternative, Defendant BI-LO contends there is a lack of evidence that it failed to exercise ordinary care because Plaintiff has not shown "why the [D]oors began to close while she was in the threshold, and has no knowledge of any defects or malfunctions in the door." Dkt. No. 65-2 at 15. Defendant BI-LO further contends it is also not liable under a failure to warn theory because it did not operate the Store, and, even if it did, "it did not have actual or constructive knowledge of any danger or defect inherent in the automatic [D]oors." Dkt. No. 65-2 at 21.

In response, Plaintiff argues that the evidence to which Defendant BI-LO cites—i.e., its responses and objections to Plaintiff's first interrogatories—does not support that Winn-Dixie Stores, Inc. is the "only" responsible entity because BI-LO's responses are "unverified." Dkt. No. 65-3 ¶¶ 8, 9; Dkt. No. 73-1 ¶¶ 1-2. Plaintiff also contends that correspondence from Sedgwick Claims Management Services, Inc. suggests that Defendant BI-LO "was involved with the operation of the [S]tore." Dkt. No. 73-1 ¶ 3.

As an initial matter, Plaintiff's argument that unverified interrogatory responses cannot support facts, dkt. no. 73-1 ¶¶ 1, 2, 24, 25, 26, 27, contradicts the explicit text of Federal Rule of Civil Procedure 56, which specifically includes "interrogatory

answers" in the types of evidence parties may rely on to show there
is no genuine dispute of material fact.   Under Rule 56(c),
"*evidence does not have to be authenticated or otherwise presented
in an admissible form to be considered at the summary judgment
stage*, as long as the evidence could ultimately be presented in an
admissible form."   Smith v. Marcus & Millichap, Inc., 991 F.3d
1145, 1156 n.2 (11th Cir. 2021) (emphasis added).

Because Plaintiff's response to Defendant BI-LO's statement
of material facts contains only a meritless objection to the
"unverified" answers, her responses are incomplete and deemed
admitted.   See Mobley v. United States Gov't, No. 5:19-CV-116,
2021 WL 5854271, at *1 n.1 (S.D. Ga. Dec. 9, 2021) ("The Federal
Rules of Civil Procedure make clear that '[a] party asserting that
a fact . . . is genuinely disputed must support [that] assertion
by: (A) citing to particular parts of material in the record . . .,
or (B) showing that the materials cited do not establish the
absence . . . of a genuine dispute[.]'" (quoting Fed. R. Civ. P.
56(c)(1))), appeal dismissed sub nom. Mobley v. United States
Gov't, No. 22-10035-CC, 2022 WL 2400011 (11th Cir. Apr. 15, 2022).
So too, the Southern District's Local Rules emphasize that "[a]ll
material facts set forth in the statement . . . will be deemed to
be admitted unless controverted by a statement served by the
opposing party." LR. 56.1; cf. Fed. R. Civ. P 56(e); see also
Wilson v. Suntrust Bank, Inc., No. 2:20-cv-20, 2021 WL 2525585, at

*1 n.4 (S.D. Ga. Apr. 9, 2021) (stating that plaintiff's simple "Denied" response to defendant's statement of fact, without a citation to the record, "is insufficient to create an issue of fact" and is deemed admitted).

   A. *Defendant BI-LO has not proven that it did not operate or otherwise have control over the Store.*

The evidence establishes there is a genuine issue of material fact regarding Defendant BI-LO's relationship with the Store. Defendant BI-LO argues that the Store is owned by Winn Dixie Stores, Inc., and that the only commonality between the two is that they share a corporate parent. Dkt. No. 65-1 ¶¶ 1, 2; Dkt. No. 65-2 at 2 n.2, 11; Dkt. No. 65-3 ¶¶ 8, 9. Defendant BI-LO did not, however, provide evidence to dispute Plaintiff's claim that the letter she received from Sedgwick Claims Management Services, Inc., on behalf of Defendant BI-LO, is at least some evidence of Defendant BI-LO's ownership and control of the Store. Dkt. No. 73-1 ¶ 3. The letter identifies "19 ST SIMONS ISLAND GA" as the "Location" of the incident at issue, was addressed to Plaintiff, and requests Plaintiff's "medical records, and billings for the treatment [she] received or [is] receiving for any injury pertaining to this incident." Dkt. No. 73-4.

It is undisputed that Sedgwick Claims Management Services is Defendant BI-LO's claims administrator. Dkt. No. 65-3 ¶ 7. "The function of a duly authorized insurance adjustor is to adjust and

settle losses, and the company which he represents will be bound by his acts within the apparent scope of his authority." Assurance Co. of Am. v. Bell, 134 S.E.2d 540, 541 (Ga. Ct. App. 1963).  And under Georgia law, Defendant BI-LO is generally bound by the representations made by its agent, here, Sedgwick Claims Management Services, when the agent acts in its agency capacity as it did in its correspondence with Plaintiff.  See O.C.G.A. § 10-6-56 ("The principal shall be bound by all representations made by his agent in the business of his agency and also by his willful concealment of material facts, although they are unknown to the principal and known only by the agent.").  Thus, to the extent Defendant BI-LO insists it does not operate the Store, it has not provided evidence sufficient to dispute the appearance of control suggested by the letter, and a genuine issue of fact remains as to Defendant BI-LO's relationship with the Store.

B. *Defendant BI-LO is entitled to summary judgment on Plaintiff's negligence and failure to warn claims.*

Even assuming Defendant BI-LO did operate or otherwise have control over the Store, however, there is no genuine issue of material fact regarding Defendant BI-LO's alleged negligence or failure to warn.

First, there is a lack of evidence that Defendant BI-LO failed to exercise ordinary care.  Dkt. No. 25 ¶ 15.  There is no evidence showing Defendant BI-LO had actual or constructive knowledge of

any danger proposed by the Doors.  The sole fact that the Doors unexpectedly closed on Plaintiff, for no reason that has been explained or proven, is not sufficient evidence that Defendant BI-LO knew or should have known that the Doors might close unexpectedly.

There is no evidence that the Doors had ever closed on any person before this incident.  Dkt. No. 68-2 at 20:5-20 (Store manager Dillon Worley, who was on duty at the time of Plaintiff's fall, testifying that, prior to the subject incident, he did not have knowledge of any customer complaints regarding the Doors' functionality or of anything causing him to believe the Doors were not functioning properly or could potentially close on someone); Dkt. No. 68-1 at 6:16-7:20; 16:13-24; 20:8-12; 36:22-25 (Store manager Wesley Dunlap testifying that since working at the store in 2008 to the time of his deposition he has no knowledge of the Doors closing on or injuring a person); Dkt. No. 68-3 at 27:24-28:14 (Store employee Nasha Jones testifying that she has never seen anyone be hit by the Doors and did not know of any problems with the Doors); Dkt. No. 65-5 ¶ 18 (Store records showing there were no prior incidents involving an automatic door closing on a customer at the Store).  Indeed, Store manager Dillon Worley even attempted to recreate the incident after Plaintiff's fall but could not because the Doors continued to function properly.  Dkt. No. 68-2 at 23:25-24:16.

12

So too, there is no evidence that Defendant BI-LO was negligent by failing to inspect or repair the Doors.  To the contrary, and despite the fact there is no evidence of any prior issue with the Doors closing on any person, Store managers and employees testified that customer service associates conduct a daily safety check to inspect the Doors and ensure they operate correctly, including on the date of the incident.  Dkt. No. 68-3 at 28-15-25; 29:17-30:11 (testimony of Store employee Nasha Jones); Dkt. No. 68-1 at 28:18-29:19 (testimony of Store manager Wesley Dunlap); Dkt. No. 68-2 at 28:7-30:3 (testimony of Store manager Dillon Worley).  The testimony of Defendant Stanley's employee Paul Snyder also shows that the Store's daily safety checks were in accordance with his recommendations.  Dkt. No. 68-4 at 16:2-4; 56:19-25.  Plaintiff has presented no evidence to the contrary nor has she shown that these inspection procedures are in some way unreasonable.  See Patrick v. Macon Hous. Auth., 552 S.E.2d 455, 459 (Ga. Ct. App. 2001) (holding that inspection of a laundry room every two hours was reasonable as a matter of law because there were no prior complaints regarding slippery or wet floors); see also Berni v. Cousins Props., Inc., 729 S.E.2d 617, 620 (Ga. Ct. App. 2012) (explaining that Georgia law "requires only the exercise of ordinary care, not extraordinary care").

There is also some evidence of the Store's prior maintenance and repair of the Doors.  Dkt. No. 68-7 ¶¶ 1, 12 (Defendant Assa

Abloy's Responses to Plaintiff's First Interrogatories describing
its prior maintenance work on the Doors); Dkt. No. 68-8 ¶ 1
(Defendant       Stanley's      Responses      to      Plaintiff's      First
Interrogatories describing its prior maintenance work on the
Doors).    Even so, the last series of repairs, performed
approximately five months prior to Plaintiff's fall, were not done
due to an issue with the Doors closing, as Plaintiff alleges was
the cause of her injuries here, but because the Doors would not
open or work at all.  Dkt. No. 68-4 at 53:5-54:8.  And after that
repair was complete the Doors functioned properly.  Id. at 50:10-
13.

Plaintiff seemingly attempts to rely on "industry standards"
for power-operated pedestrian doors set forth by American National
Standard     Institute    ("ANSI")    and    the    Builders    Hardware
Manufacturers Association ("BHMA") but does not explain how these
standards are related to her contentions regarding Defendant BI-
LO's alleged negligence or failure to warn.  Dkt. No. 73 at 18,
19; Dkt. No. 73-3.  The Court is unable to guess what role a given
industry standard plays in resolving this case.   Accordingly,
Plaintiff fails to present any evidence showing how or in what way
the Doors were defective or dangerous.

Plaintiff does not know why the Doors closed while she was
standing in the threshold, dkt. no. 73-2 ¶ 5, has not identified
how or in what way the Doors supposedly malfunctioned or were

14

otherwise defective, dkt. no. 65-8 at 27:20-23; dkt. no. 73-2 ¶ 5, and has presented no expert to prove or explain her contentions regarding the sporadic ANSI and BHMA subsections cited throughout her briefs.  Thus, there is no evidence that Defendant BI-LO had superior knowledge of a defect, dangerous condition, or malfunction of any sort, or failed to take reasonable precautions to protect Plaintiff and other invitees from foreseeable risks. Robinson, 493 S.E.2d at 408-09.

Likewise, there is a lack of evidence that Defendant BI-LO failed to adequately warn Plaintiff that the Doors could close while a person was in the threshold.  Dkt. No. 25 ¶ 15.  There is no evidence in the record showing Defendant BI-LO's actual or constructive knowledge of any danger or defect in the Doors or even the possibility that the Doors could close while a person was in the threshold.  There is evidence, however, that the Store placed the manufacturer's required warning stickers on both sides of the Doors.  Dkt. No. 68-5 at 116; 65-9 at 60, 61.  These stickers contained the following language: "AUTOMATIC DOOR — STAND CLEAR," and "Caution Automatic Door."  Dkt. No. 65-9 at 60, 61.  Likewise, Plaintiff fails to present any evidence to the contrary, and does not otherwise provide evidence suggesting that these warning stickers were inadequate.  In fact, Plaintiff testified that she does not recall the stickers but that she is unaware of any

evidence that would show that the stickers were not on the Doors on the day of the incident.  Dkt. No. 65-9 at 23:16-24:-5.

At bottom, Plaintiff fails to present any evidence of a defect or malfunction, let alone Defendant BI-LO's actual or constructive knowledge of any potential defect or malfunction proposed by the Doors.  This lack of evidence is fatal to both her negligence and failure-to-warn claims against Defendant BI-LO.  Thus, Defendant BI-LO's motion for summary judgment is **GRANTED**.[3]

## II. Defendant Assa Abloy's Motion for Summary Judgment

Plaintiff alleges that Defendant Assa Abloy, the manufacturer of the Doors, is liable under a strict liability theory because the "[D]oor was unreasonably dangerous and/or defective, and . . . this defect was also a contributing cause of the Plaintiff's injuries."  Dkt. No. 25 ¶ 17.  Separately, Plaintiff alleges that Defendant Assa Abloy was negligent "in installing, maintaining, and/or repairing" the sliding door.  Dkt. No. 25 ¶ 18.  For the reasons below, Defendant Assa Abloy is entitled to summary judgment on Plaintiff's claims.[4]

---

[3] During the hearing on the various motions for summary judgment, Defendant BI-LO stated that it filed crossclaims against Defendants Stanley and Assa Abloy to protect its rights but that it did not see any evidence of negligence with regard to either Stanley or Assa Abloy and offered to withdraw its crossclaims. Thus, Defendant BI-LO's crossclaims are deemed **WITHDRAWN**, and Defendant Stanley's motion for summary judgment as to the crossclaim, dkt. no. 60-1, is **DENIED as moot**.
[4] The Court declines to address Plaintiff's failure to warn argument because it not only names the wrong Defendant but also

Defendant Assa Abloy moves for summary judgment on both Plaintiff's strict liability and negligence claims.  Dkt. No. 62. Defendant Assa Abloy's arguments regarding Plaintiff's strict liability claim are two-fold.  First, Defendant Assa Abloy contends that Plaintiff's strict liability claims are barred by the applicable statute of repose.  Dkt. No. 62 at 9.  Second, Defendant Assa Abloy argues, in the alternative, that even if Plaintiff's claims are not time-barred, Plaintiff has not shown that the door was "unreasonably defective or dangerous" because "Plaintiffs have failed to put forth any evidence whatsoever regarding the door's manufacture, or installation, and there is no evidence in the record showing that Assa Abloy played any role in the door's installation."  Dkt. No. 62 at 5.

Regarding Plaintiff's negligence claim, Defendant Assa Abloy contends that Plaintiff has not shown that it breached any duty to Plaintiff because neither it nor its subsidiaries performed maintenance or repairs on the Doors "for over a year prior to [Plaintiff's] fall."  Dkt. No. 62 at 9.  Defendant Assa Abloy further contends that "evidence in the record shows that at least two other companies provided maintenance and repairs to the door

---

only appears in Plaintiff's response brief.  Dkt. No. 74 at 19. See Champ v. Calhoun Cnty. Emergency Mgmt. Agency, 226 F. App'x 908, 912 n.3 (11th Cir. 2007) ("[A] party cannot amend her complaint to add a new claim through argument in a brief opposing summary judgment").

in the two years" after Defendant Assa Abloy's last recorded date of service.   Id.

    *A. Plaintiff's strict liability claim against Defendant Assa Abloy is barred by the statute of repose.*

Under Georgia law, "[t]he manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury." O.C.G.A. § 51-1-11(b)(1).   The rationale behind imposing strict liability on manufacturers is that it "places a burden on the manufacturer who markets a new product to take responsibility for injury to members of the consuming public for whose use and/or consumption the product is made."   S K Hand Tool Corp. v. Lowman, 479 S.E.2d 103, 106 (Ga. Ct. App. 1996) (citing Robert F. Bullock, Inc. v. Thorpe, 353 S.E.2d 340, 341 (Ga. 1987)).

Accordingly, a person or entity who only services, repairs, or rebuilds a product is not considered a "manufacturer."   See Barry v. Stevens Equip. Co., 335 S.E.2d 129, 131 (Ga. 1985) (explaining that whatever the broader definition of the term "manufacturer" is within the Georgia code, to be considered a

"manufacturer," a person or entity, at minimum, "must *sell* the product" (emphasis in original)). Thus, Georgia law imposes strict liability, irrespective of privity, only on manufacturers who actually sell the product at issue. Id. Additionally, the statute does not generally subject service providers to strict liability for services performed on or in conjunction with defective products. See Seaboard Coast Line R.R. v. Mobil Chem. Co., 323 S.E.2d 849, 852 (Ga. Ct. App. 1984) ("We also note that in Georgia any imposition of strict liability through an implied warranty of fitness is applicable by statute to the manufacturers of new products, . . . and it is not applicable to the providers of services.").

The statute of repose for claims brought pursuant to O.C.G.A. § 51-1-11 is ten years. See O.C.G.A. § 51-1-11(b)(2) ("No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury."). O.C.G.A. § 51-1-11(b)(2)'s ten-year statute of repose "begins to run when a finished product is sold as new to the intended consumer who is to receive the product." Campbell v. Altec Indus., Inc., 707 S.E.2d 48, 48-49 (Ga. 2011).

Here, Plaintiff's claims against Defendant Assa Abloy are time barred because the undisputed evidence shows that the Doors were installed sometime in 2008 during a remodel of the Store by

a company named Task Force, twelve years before Plaintiff's fall. Dkt. No. 62-6 at 9 (Store manager Wesley Dunlap responding "New. Newly, yes," when asked if the Doors and sensors were originally installed in 2008); Dkt. No. 74-1 ¶¶ 1, 6 (only objecting that the interrogatory responses are "unverified").   In support of its motion for summary judgment, dkt. no. 62, Defendant Assa Abloy cites the deposition of Store manager Wesley Dunlap, who testified that "the door was installed sometime in 2008." Dkt. No. 62-1 at 5; Dkt. No. 62-6 at 9:30-6-24.  It is undisputed that Plaintiff's fall occurred on June 24, 2020, approximately twelve years after the Doors' installation.  Dkt. No. 62-2 ¶ 1; Dkt. No. 74-1 ¶ 1.

Plaintiff's only response is inadequate to defeat summary judgment.  She does not provide any facts or evidence to dispute the 2008 installation; instead, she simply states that the "unverified interrogatories responses prove nothing." Dkt. No. 74-1 ¶ 6.   Additionally, Plaintiff confusingly argues that Defendant Assa Abloy's employee Juan Gonzalez's testimony does not support installation in 2008. Id.  However, Gonzalez simply does not know when the installation occurred.  Id.  He in no way contradicts the undisputed evidence on which Defendant Assa Abloy relies.  Defendant Assa Abloy relies on the testimony of Wesley Dunlap—not Juan Gonzalez—to show the Doors were installed in 2008. Dkt. No. 62-1 at 8.  So, Wesley Dunlap gave affirmative evidence

of the 2008 date.  Dkt. No. 62-1 at 5; Dkt. No. 62-6 at 9:30-6-24.  Juan Gonzalez did not contradict it.

Plaintiff's challenge to the date of the Doors' installation is inadequate.  As such, the undisputed evidence shows that the Doors were installed sometime in 2008.  Dkt. No. 62-6 at 9; Dkt. No. 74-1 ¶¶ 1, 6.  Therefore, Plaintiff's strict liability claim against Defendant Assa Abloy is time-barred because the Doors were installed approximately twelve years before Plaintiff's fall, which is well outside the ten-year statutory period permitted by O.C.G.A. § 51-1-11.  Accordingly, Defendant Assa Abloy's motion for summary judgment as to Plaintiff's strict liability claim, dkt. no. 62, is **GRANTED**.

> *B. Defendant Assa Abloy is entitled to summary judgment on Plaintiff's negligent installation, maintenance, and repair claims.*

It is well established that to recover on a negligence claim in Georgia, Plaintiff must prove duty, breach, causation, and damages.  <u>Callaway Gardens Resort, Inc. v. Grant</u>, No. A22A0856, 2022 WL 3907720, at *2 (Ga. Ct. App. Aug. 31, 2022).  "Whether a duty exists upon which liability can be based is a question of law."  <u>Strozier v. Herc Rentals, Inc.</u>, No. 1:19-CV-01083, 2022 WL 975602, at *3 (N.D. Ga. Mar. 31, 2022) (citing <u>City of Rome v. Jordan</u>, 426 S.E.2d 861, 862 (Ga. 1993)).  "If a defendant owes no legal duty to the plaintiff, there is no cause of action in

negligence." Dupree v. Keller Indus., Inc., 404 S.E.2d 291, 294 (Ga. Ct. App. 1991). Moreover, "[n]o matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff." City of Douglasville v. Queen, 514 S.E.2d 195, 197-98 (Ga. 1999).

Additionally, "in order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty." McEntyre v. Sam's East, Inc., 870 S.E.2d 385, 389-90 (Ga. 2022) (quoting Goldstein, Garber & Salama, LLC v. J.B., 797 S.E.2d 87, 89 (Ga. 2017)). "And the injuries must be the 'probable or natural consequence' of that breach and must 'reasonably have been anticipated, apprehended, or foreseen.'" Id. at 390 (quoting Goldstein, 797 S.E.2d at 89); see also Tyner v. Matta-Troncoso, 826 S.E.2d 100, 104 (Ga. 2019) ("Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability, the idea that a defendant could reasonably foresee that an injury would result from his act or omission." (citations omitted)).

Finally, "[i]t is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act

of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's acts, and which was sufficient of itself to cause the injury." Walker v. Giles, 624 S.E.2d. 191, 200 (Ga. Ct. App. 2015) (quoting Black v. Ga. S. & Fla. R. Co., 415 S.E.2d 705, 707 (Ga. Ct. App. 1992)). "This requirement reflects a policy decision that in certain circumstances—i.e., where there is an intervening act—the defendant's conduct and the plaintiff's injury are too remote for the law to allow recovery." Westbrook v. Atlanta Gas Light Co., 795 S.E.2d 320, 324 (Ga. Ct. App. 2016). Thus, "the causal connection is not broken, and the original wrongdoer may be held responsible, if the intervening act 'was such that its probable or natural consequence could reasonably have been anticipated, apprehended, or foreseen by' the original wrongdoer." Id. (quoting Ontario Sewing Mach. Co. v. Smith, 572 S.E.2d 533, 536 (Ga. 2002)). The question of proximate cause "may be decided as a matter of law when the jury could conclude only that the defendant's acts were not the proximate cause of the injury." Id.

In its motion for summary judgment, dkt. no. 62, Defendant Assa Abloy contends that Plaintiff has not shown that it breached any duty because: it did not install the Doors, dkt. no. 62-1 at 6; neither it nor its subsidiaries maintained or repaired the Doors for over one year prior to Plaintiff's accident, id. at 9; and at

least two other companies serviced the Doors after its last recorded service date, id.

1. *Negligent Installation*

Basically, Defendant Assa Abloy shows that it did not negligently install the Doors because it did not install them at all.  In support of its contention that it did not install the Doors, Defendant Assa Abloy cites the deposition of Winn-Dixie employee Wesley Dunlap, dkt. no. 62-6, who testified that to the best of his knowledge, the Door was "newly" installed sometime in 2008 by a company called "Task Force," dkt. no. 62-1 at 5; dkt. no. 62-6 at 9:30-6-24, and Defendant Assa Abloy's own interrogatory responses, dkt. no. 62-9 ¶ 1, stating "that it is not in possession of any information which indicates that it improperly manufactured the door or any of its components, that it improperly installed the door at issue, or indeed any information regarding who installed the door at issue."

In both her amended complaint and her response brief, Plaintiff fails to point to a specific act or omission by Defendant Assa Abloy in connection with the installation of the Doors.  In her response brief, Plaintiff points only to the fact that Defendant Assa Abloy "has been sued many times because [D]oors it manufactured closed on persons passing through the doorways." Dkt. No. 74 at 19.  In other words, Plaintiff contends that because Defendant Assa Abloy has been sued by someone else, at some other

place, at some other time, the previous suits serve as evidence that this suit is proper.  Such a contention falls astonishingly short of creating a genuine issue of material fact to defeat summary judgment.

Accordingly, Plaintiff has offered no evidence showing Defendant Assa Abloy had any role in the installation of the Doors. Thus, even viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact as to Assa Abloy's alleged negligent installation of the Doors, and Defendant Assa Abloy's motion for summary judgment, is **GRANTED**.

*2. Negligent Maintenance and/or Repair*

Plaintiff also fails to meet the summary judgment threshold on her negligent maintenance and/or repair claim against Defendant Assa Abloy because she does not point to any act or omission by Defendant Assa Abloy in connection with the maintenance and/or repair of the Doors.  Dkt. No. ¶ 25; Dkt. No. 74.  Instead, Plaintiff relies on industry standards for power-operated pedestrian doors set forth by ANSI.  Dkt. No. 74 at 18, 19; Dkt. No. 73-3.  However, Plaintiff does not explain how these standards are related to her contentions regarding Defendant Assa Abloy's alleged negligent maintenance and/or repair.  In fact, Plaintiff does not mention any of the named Defendants in this case in connection with the ANSI standards, and instead, only mentions "Winn Dixie," who is not a party in this case.  See Dkt. 74 at 18

("Winn Dixie should have had annual inspections, but failed to have annual [American Association of Automatic Door Manufacturers ("AAADM")] compliance inspections performed on the automatic [D]oors involved in the lawsuit . . . ."); id. ("Winn Dixie should have known, of the dangers but failed to make the subject automatic door safe . . . ."; id. at 19 ("Winn Dixie should have had annual AAADM compliance inspections performed on the doors and by bringing the door into compliance with ANSI/BHMA A156.10 by having mandated dual hold open beams installed.").

Moreover, through her own testimony, Plaintiff admits she does not know how the Doors operate, dkt. no. 62-3 at 36:14-37:14, or anything regarding the condition of the Doors, including whether there was anything wrong with the sensors, dkt. no. 62-3 at 28:13-18. Plaintiff simply argues "something happened because [the Door] hit [her]." Dkt. 62-3 at 27:20-23; Dkt. No. 74-1 ¶ 5. Plaintiff has presented no expert testimony to prove or explain her contentions or to shed any light on the ANSI and BHMA subsections sprinkled in her briefs.

To the extent Plaintiff relies on the doctrine of res ipsa loquitur to fill the evidentiary gaps in her pleadings, that reliance is also misplaced. Under Georgia law, res ipsa loquitur "is an evidentiary based rule which provides for an inference of negligence to arise from the occurrence of an injury-causing incident." Matthews v. Yoplait USA, Inc., 835 S.E.2d 393, 396

(Ga. Ct. App. 2019).   Res ipsa loquitur is useful where "(1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality *within the exclusive control of the defendant*; and (3) it must not have been due to voluntary action or contribution on the part of the plaintiff."   Aderhold v. Lowe's Home Ctrs., Inc., 643 S.E.2d 811, 812-813 (Ga. Ct. App. 2007) (emphasis added) (quoting Kmart Corp v. Larsen, 522 S.E.2d 763, 765 (Ga. Ct. App. 1999)).   It is undisputed that Defendant Assa Abloy did not have exclusive control over the Doors or the Store.   See Dkt. No. 74 at 18 (Plaintiff's response brief stating "Winn Dixie was in exclusive control of the [Doors] which is the basis of this lawsuit."). Thus, by her own admission, the doctrine of res ipsa loquitur is inapplicable to any of Plaintiff's claims against Defendant Assa Abloy, or, for that matter, any of the other named Defendants in this case.

Plaintiff also fails to show how Defendant Assa Abloy's maintenance and/or repairs could be the proximate cause of her injuries, particularly when considering Defendant Assa Abloy's evidence that two other companies "intervened" by servicing the Doors after Defendant Assa Abloy's final recorded service, which occurred over one year prior to Plaintiff's fall.   Dkt. No. 62-1 at 9 (stating that neither Defendant Assa Abloy nor any of its subsidiaries performed maintenance or repairs on the Doors "for

over a year prior to [Plaintiff's] fall"); Dkt. No. 62-7 (Master
Service Agreement); Dkt. No. 62-8 (Customer Report logging every
service Defendant Assa Abloy performed at the Store); Dkt. No 62-
6 at 4 (Store manager Wesley Dunlap testifying to City Facility
Maintenance's service work at the Store); Dkt. No. 62-10
(describing Defendant Stanley's work at the Store). See Walker,
276 S.E.2d. at 200.

So, while Plaintiff fails to assert exactly how Defendant
Assa Abloy was negligent, even if she did show the breach of some
duty, Plaintiff still fails to show how Defendant Assa Abloy's
acts or omissions, whatever they may be, are not "too remote for
the law to allow recovery." Westbrook, 795 S.E.2d at 324.

Therefore, even when taking all inferences in the light most
favorable to Plaintiff, there is no genuine issue of material fact
regarding Defendant Assa Abloy's maintenance and/or repair of the
Doors, and Defendant Assa Abloy's motion for summary judgment, to
that end, is **GRANTED**.

### III. Defendant Stanley's Motion for Summary Judgment

Plaintiff alleges that Defendant Stanley "is believed to have
done work on the [D]oor opening device, in a negligent manner which
may have been a contributing proximate cause of the injuries to
the Plaintiff." Dkt. No. 25 ¶ 20. Defendant Stanley is entitled
to summary judgment on Plaintiff's claims.

Defendant Stanley performed services on the Doors twice, last in January of 2020. Dkt. No. 60-1 at 3; Dkt. No. 60-3 at 81:17-22. At the conclusion of that service, "the subject [D]oors and all sensors and components passed the walk test and were in good working order," dkt. no. 60 at 3; dkt. no. 60-3 at 94:14-95:13, and "[n]o error messages were received," thereafter, dkt. no. 60 at 8, dkt. no. 60-3 at 94:14-95:13.

As discussed <u>supra</u> with respect to Plaintiff's claims against Defendant Assa Abloy, in order to recover on a negligence claim in Georgia, Plaintiff must prove duty, breach, causation, and damages. <u>Callaway Gardens Resort</u>, 2022 WL 3907720, at *2. "Whether a duty exists upon which liability can be based is a question of law." <u>Strozier</u>, 2022 WL 975602, at *3 (citing <u>City of Rome</u>, 426 S.E.2d at 862). "If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence." <u>Dupree</u>, 404 S.E.2d at 294.

In its motion for summary judgment, Defendant Stanley contends "[t]here are no facts, witnesses, or documents that support even a reasonable inference that [Defendant Stanley's] single service, five (5) months prior to Plaintiff's incident, on doors not manufactured by [Defendant Stanley], nor maintained by [Defendant Stanley], on premises not owned or controlled by [Defendant Stanley], was negligent or caused Plaintiff's alleged injuries." Dkt. No. 60 at 7. In summary, Defendant Stanley denies

the existence of a duty to Plaintiff and, in the alternative, denies any causal connection between the services Defendant Stanley performed on the Doors and Plaintiff's injuries. Id. at 11.

In support of its motion, Defendant Stanley points to Plaintiff's own admissions to show both that the Store is not its store and the Doors are not its doors. See Dkt. No. 60 at 7; Dkt. No. 25 ¶ 6 (Plaintiff's Amended Complaint, stating "On June 4, 2020, and all other times relevant herein, the [Defendant Bi-Lo] operated [the Store] . . . ."); Dkt No. 60-2 ¶ 5 (Plaintiff's interrogatory response stating "[t]he Plaintiff does not contend that [Defendant Stanley] had 'control of or authority over the door' [h]owever, the actions or inactions of [Defendant Stanley's] employees or agents may have contributed to the dangerous condition . . . ."). To show it did not design, manufacture, sell, market, install, or maintain the Doors or "any component part" thereof, Defendant Stanley points to its own interrogatory responses, the deposition testimony of its employee, Stanley Snyder, Plaintiff's contentions in various filings, and the deposition testimony of Defendant Assa Abloy's employee, Juan Gonzalez. See Dkt. No. 60 at 7; Dkt No. 60-4 ¶¶ 1, 8 (Defendant Stanley's interrogatory responses explaining, in part, "that it did not own, operate, or control the [Store] or [the Door] . . . . The [Door] was not designed, manufactured, purchased, sold, owned, controlled,

installed, or maintained by [Defendant Stanley]. There was no contract between [Defendant Stanley] and any other entity regarding or requiring maintenance of any door at the [Store], including the [Door] or its component parts" and that "neither the [Door], nor any component part, was designed, manufactured, sold by, controlled, or maintained by Defendant Stanley. Upon information and belief, the [Door] was designed and/or manufactured by Besam/[Defendant] Assa Abloy, and Plaintiff may refer to the documents produced by [Defendant] Assa Abloy for further information as to the function of the [D]oor."); Dkt. No. 25 ¶ 18 (Plaintiff's amended complaint stating that Defendant Assa Abloy is "liable because of its negligence in installing, maintaining and/or repairing the [Door] . . . ."); Dkt. No. 60-3 at 81:17-22 (Defendant Stanley's employee Stanley Snyder's deposition testimony explaining he did work on the Doors twice); id. at 83:14-16 (employee Snyder describing Defendant Stanley's work on the Doors during its first service at the Store); id. at 84:11-13 (employee Snyder describing Defendant Stanley's work on the Doors during its second service at the Store); id. at 85:10-21 (employee Snyder testifying that Defendant Stanley does manufacture doors similar to the Doors at the Store but that "the parts are not interchangeable"); Dkt. No. 60-3 at 34:5-35:17 (Defendant Assa Abloy's employee Juan Gonzalez testifying that Defendant Assa Abloy sold the Doors but did not install the Doors).

31

Defendant Stanley also provides evidence that while Defendant Stanley services Assa Abloy doors and products, the two are different companies with different parts and equipment; additionally, when servicing the Doors, employee Snyder followed the Assa Abloy manual and ordered original Assa Abloy parts.  Dkt. No. 84:11-13-85:10-20.

In the face of this evidence supporting summary judgment, Plaintiff offers no real dispute.  In both her amended complaint, dkt. no 25, and her response brief, dkt. no. 75, Plaintiff fails to point to any specific act or omission by Defendant Stanley in connection with her injuries.  In her response brief, Plaintiff only points to the fact that Defendant Stanley "has been sued many times for personal injuries suffered by persons injured by automatic doors manufactures and/or maintained by [Defendant Stanley]."  Dkt. No. 75 at 19.  Again, prior, unrelated lawsuits are insufficient evidence to create a genuine issue of material fact.  Accordingly, Plaintiff has not shown that any work performed by Defendant Stanley was below the standard of care or negligent in any way.  Again, Plaintiff has no expert to offer opinions on what went wrong, why or how.

Additionally, to the extent Plaintiff relies on the doctrine of res ipsa loquitur to show negligence, the application of the doctrine as to Defendant Stanley fails for the same reasons it fails against Defendant Assa Abloy—i.e., Plaintiff's own admission

that an essential element, "exclusive control," is not met.  See
Dkt. No. 75 at 18 (Plaintiff's response brief stating, "Winn Dixie
was in exclusive control of the [Doors] which is the basis of this
lawsuit."); see also Dkt. No. 25 (Plaintiff's amended complaint
alleging that all three Defendants in this case are liable under
a res ipsa loquitur theory); Aderhold, 643 S.E.2d at 812-13.

Thus, even taking all inferences in favor of Plaintiff, there
is no genuine issue of material fact as to Plaintiff's negligence
claims against Defendant Stanley, and Defendant Stanley's motion
for summary judgment, dkt. no. 60, is **GRANTED.**

**CONCLUSION**

For the foregoing reasons, Defendant BI-LO's crossclaim
against Defendants Stanley and Assa Abloy is deemed **WITHDRAWN,** and
Defendant Stanley's motion for summary judgment on the crossclaim,
dkt. no. 60, is **DENIED as moot.**  Otherwise, Defendants' motions
for summary judgment as to Plaintiff's claims, dkt. nos. 60, 62,
65, are **GRANTED** in their entirety.  Accordingly, the November 7,
2022 pretrial conference and the November 29, 2022 jury trial are
**CANCELED.**  There being no claims remaining in this action,[5] the
Clerk is **DIRECTED** to **CLOSE** this case.

---

[5] Because Gene Anglin's loss of consortium claim is derivative of
Plaintiff's claims, its success was dependent on Plaintiff's
success, and, accordingly, fails.  See Johnson v. Metro. Atlanta
Rapid Transit Auth., 495 S.E.2d 583, 585 (Ga. Ct. App. 1998)
(affirming grant of summary judgment for defendant on negligence

**SO ORDERED,** this 1st day of November, 2022.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

claim also defeated spouse's derivate claim for loss of
consortium).